## J. A. ELLIOTT v. I. C. MORRIS.

### Decided March 12, 1908.

**1.—Judgment—Estoppel.**

J. A. E. and W. F. E. were brothers, and had been partners in business. L. was indebted to J. A. E., and for the purpose of paying his indebtedness had a deed prepared to a section of land owned by him, but by mistake the deed was executed to both of the brothers, instead of to J. A. E. alone; after the deed was executed it was delivered by L. to the attorneys of J. A. E., who neglected for more than two years to notify J. A. E. that the deed had been executed; shortly after the execution of the deed M. brought suit in trespass to try title against L. for the land; W. F. E. assisted L. in employing counsel to defend the suit, and was present at the trial; J. A. E. had nothing to do with the case until after trial and judgment against L., when he· became a surety on L.'s appeal bond, and otherwise interested himself in having the judgment reversed, to the end that he might collect his debt against L., which he supposed was still unpaid. Held, the partnership between J. A. E. and W. F. E. having been dissolved long prior thereto, J. A. E. was not estopped by the acts of W. F. E. in the suit of M. against L. for the land, and the judgment rendered therein was not conclusive upon J. A. E.

**2.—Trespass to Try Title—Judgment—Parties Bound.**

In trespass to try title the judgment is conclusive only upon parties to the action, their privies, and those claiming by conveyance made pending the action.

**3.—Charge—Issue Without Evidence.**

It is error for the trial court to submit an issue tendered by the pleading but without evidence to support it.

**4.—Trespass to Try Title—Mortgage—Alternative Relief.**

When, in trespass to try title, the plaintiff prays for alternative relief in the way of foreclosure in the event the instrument he relies on to prove title should be held to be a mortgage, and introduces evidence to warrant a foreclosure, it is error for the court to instruct a verdict for the defendant if the jury should find the instrument to be a mortgage.

**5.—Trespass to Try Title—School Land—Fraud—Common Source.**

Where, in trespass to try title to a section of school land, the plaintiff and defendant claim the land under a common source, and the defendant plead only estoppel by judgment, it was error for the court to instruct the jury to find for the defendant if they found from the evidence that the common source of title had perpetrated a fraud upon the State in acquiring the land. It was a defense the defendant could not assert without proper pleading showing a right in himself to the land other than through the purchase thereof by the common source.

Appeal from the District Court of Nolan County. Tried below before Hon. Jas. L. Shepherd.

No briefs reached the reporter.

WILLSON, CHIEF JUSTICE.—The suit was brought by appellant against appellee to try the title to section No. 34, in block No. 20, situated in Nolan County and surveyed for the benefit of the public schools by virtue of a certificate issued to the Texas & Pacific Ry. Company. It does not appear from the record when the suit was

commenced. Appellee's first amended original answer was filed November 14, 1905, and consisted of a general denial, a plea of not guilty, a plea of *res adjudicata,* and a plea of title under the three years' statute of limitation. In accordance with the verdict of a jury on April 5, 1907, a judgment was rendered in favor of appellee.

The evidence shows, and we find as facts, that the land was patented to one W. C. Logan, November 14, 1900, as the purchaser thereof from the State in accordance with the provisions of the Act of 1895, General Laws, p. 63, and the Act of 1897, General Laws, p. 184; that on January 4, 1901, appellant from Arlington wrote to Logan at Merkel as follows: "Your letter to hand. Will say that I can't say just when I will be out. Now, W. C., you have a patent to 34. I will give you $2.25 per acre. If you don't want to take the price, I would like to have some showing for what you owe me. If you will, I wish you would go to Beall & Beall and fix this up some way;" that the Beall & Beall referred to in the letter was a firm of lawyers doing business in Sweetwater, and as such had been representing appellant; that on January 21, 1901, Logan handed to W. W. Beall, a member of said firm of Beall & Beall, the letter quoted above and stated that he wished to convey the land to appellant; that Beall thereupon prepared a deed to be executed by Logan conveying the land to appellant and W. F. Elliott jointly; that said W. F. Elliott and appellant had been partners in business, and Beall so prepared the deed on the supposition that Logan wished to convey to the partnership; that as so erroneously prepared the deed was executed by Logan and delivered to Beall for appellant; that Beall placed the deed with other papers belonging to appellant in his, Beall's, office, which with its contents, including the deed, was destroyed by fire in December, 1901; that at the time it was executed Beall did not then advise appellant that Logan had executed the deed, and appellant did not learn of its execution until the fall of 1903; that November 23, 1903, in lieu of the destroyed deed Logan made another deed conveying the land to appellant; that to correct the error in the original deed from Logan to appellant whereby the land was conveyed to him and W. F. Elliott jointly, the latter, by an instrument executed March 3, 1904, released to appellant his interest in the land; that on February 7, 1901, appellee brought suit against Logan to try the title to the land, which on a trial had April 18, 1901, resulted in a judgment in favor of appellee for the land; and that an appeal perfected from this judgment was not prosecuted and the same was on March 8, 1902, affirmed on certificate.

On a former appeal of this case the Court of Civil Appeals for the Second District on testimony the same, apparently, as the testimony in the record on this appeal, held that the instrument executed by Logan January 21, 1901, and delivered to Beall for appellant, thereupon became effective as a deed and operated to pass to appellant the legal title to the land. (98 S. W., 221.) We now concur in the conclusion then reached by that court.

On that appeal the case was remanded for a new trial because the trial court had made no finding on appellee's plea of *res adjudicata.* On the trial resulting in the judgment from which this appeal is

prosecuted, the issue, with others, was submitted to the jury, and a general verdict in appellee's favor was returned.

The judgment relied upon as being conclusive of the controversy between the parties to this suit was rendered April 18, 1901, in a statutory action of trespass to try title brought by appellee against Logan February 7, 1901. On the face of the record of that suit appellant was not a party to it. The contention on the trial of this suit was that he had employed counsel and assisted in the defense of that suit, and that thereby, while not a nominal, he became a real party to the suit, and so was concluded by the judgment rendered therein. If we concurred in appellee's view of the law, we would doubt the sufficiency of the evidence in the record before us to support a finding that appellant was concluded by the judgment. Personally he had not employed counsel to defend the suit prior to its trial nor in any way assisted in trying or preparing it for trial. Personally he was not present when it was tried. His connection, if any, with that suit before it was tried was through his brother W. F. Elliott. The latter with Logan employed an attorney to defend the suit, and was present and assisted in its trial. Appellant and W. F. Elliott prior to 1899 had been partners in business, and it may be assumed together, as partners, were then interested in transactions had with Logan respecting the land in controversy and other lands. If that partnership had existed at the time W. F. Elliott took the part he was shown to have taken in the defense of the Morris suit, and if that partnership had then owned the interest in the land which appellant by his suit is now seeking to recover, it might well be contended that appellant was bound by said W. F. Elliott's acts. But appellant testified that the partnership between himself and W. F. Elliott ceased to exist in 1899, long before the commencement of Morris' suit against Logan. There is nothing in the record to contradict his testimony in this particular, except an allegation in the petition in a suit filed November 8, 1902, by Logan, "suing," it recites, "for himself and for the use and benefit of W. F. and J. A. Elliott" against one Armstrong for damages for an alleged failure to properly prosecute an appeal taken by Logan against the judgment rendered in the Morris suit, that they then were and before that time had been partners in the land transactions with Logan. The allegation in the petition referred to, which for anything to the contrary appearing in the record, may have been made without appellant's consent or knowledge, ought not to be given weight as evidence contradicting his testimony. There is in the record no evidence that W. F. Elliott in any other way than as appellant's partner had been authorized to act for him in anything he, W. F. Elliott, had done in connection with the defense of the Morris suit. No reason therefore is apparent why appellant should be held to be bound by acts or conduct of his brother in connection with the suit. So, it may be said there is an absence in the record of evidence sufficient to support the contention that at the time of the trial of the Morris suit appellant had in any manner had any connection with it. After that suit was tried, however, it appears that appellant became a surety on Logan's bond on his appeal from the judgment rendered,

and interested himself in an effort to have the judgment against Logan reviewed by the Appellate Court. This seems to have been his only connection with that litigation. He was then ignorant of the fact that the land had been conveyed to him by Logan's deed of January 21, 1901, and explained the interest taken by him in the suit by the statement that Logan was indebted to him, was insolvent, and owned no property, other than the land, to which he could look for his debt. We do not think, in any view of the law, that the connection appellant was shown to have had with the suit after it had been finally tried, should be held to operate to conclude him from asserting the title he is here asserting to the land.

But there is another view, precluding such a result, to be taken of the case. The Morris suit against Logan was the statutory action of trespass to try title. The law then and now in force declared that "any final judgment rendered in any action for the recovery of real estate hereafter commenced shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, or by title arising after the commencement of such action." Sayles' Stat., art. 5275. Construing the statute quoted Chief Justice Stayton, in Stout v. Taul, 71 Texas, 444, says: "This restricts the conclusive effect of the judgment to the parties in legal effect before the court where it is rendered, makes certain by the record the extent and effect of the judgment, and avoids all uncertainty in reference to such judgments as would result if evidence outside the record might be resorted to for the purpose of showing who are bound by a judgment or, in other words, who were parties to the action. It establishes a rule consistent with the principle of justice which denies effect to a judgment against any one not brought before the court rendering it in some mode prescribed by law, except as to those claiming through a party to such action through inheritance or representative, or by conveyance made pending or after the commencement of the action." And see Haney v. Brown, 46 S. W., 57. So construed, it seems to us the statute must be held to be conclusive of the question made on this appeal. The trial court should not have submitted as an issue to be determined by the jury appellee's plea of *res adjudicata*. The plea on its face was insufficient, and the evidence admitted under it did not present a defense to appellant's suit.

The trial court instructed the jury to find for appellee if they believed the instrument executed by Logan January 21, 1901, and purporting to convey the land to appellant and W. F. Elliott, was not intended to operate as a deed, but instead was intended as security for a debt due by Logan to appellant. There is no evidence of any probative force in the record sent to this court tending to show that the instrument may have been intended at the time it was executed to operate other than as a deed. Appellant in his letter to Logan offered him $2.25 per acre for the land, and expressed a desire, if Logan should not be willing to accept the price offered, for "some showing for what" Logan owed him. Logan's instructions to Beall, after receiving the letter, were to prepare a deed conveying the land to appellant. Such a deed was prepared by Beall and executed and delivered by Logan. There

is not in the record the slightest evidence indicating that the parties then understood that instrument to be or as intended to operate as anything other than a deed.

But had the evidence established the instrument as a mortgage, the charge would have been erroneous. In his supplemental petition appellant had alleged facts which if proven would have entitled him, as the alternative relief he prayed for, to a foreclosure of the instrument, if a mortgage, in the absence of allegation and proof on appellee's part of facts sufficient to defeat such a foreclosure. It therefore clearly was error to instruct the jury to return a verdict for appellee merely on a finding that the instrument was intended to operate as security for a debt.

It appeared from the evidence on the trial that on January 15, 1896, one, Reid, as an actual settler thereupon, applied to purchase section 38, contiguous to the land in controversy; that said section 38 was awarded to him by the Commissioner of the General Land Office, February 21, 1896; that on October 13, 1897, he sold and conveyed his right to the land so awarded to him to Logan; that on January 14, 1899, Logan as an actual settler thereupon, applied to purchase said section 38; that on February 23, 1899, Reid made proof that he had occupied the land from the date of his application to purchase it to the date of his sale thereof to Logan; that on March 13, 1899, Logan made proof that he was then the owner of the land by purchase from Reid, and that he and Reid together had resided upon the land for three consecutive years from the date of its sale by the State to Reid; and that on such proof on January 19, 1901, section 38 was patented to Logan as assignee of Reid. Under the provisions of the law then in force permitting an actual settler who had become the owner of, or who had been awarded, a part of the lands authorized to be sold, to purchase other and contiguous lands, on August 10, 1900, Logan applied to purchase the land in controversy, making oath that his home was then on said section 38. In accordance with his application the land was awarded to Logan September 20, 1900, and it was patented to him November 14, 1900.

At appellee's request the court instructed the jury to find in his favor if they believed that at the time Logan filed on the land in controversy he did not own section 38 or was not residing thereupon. The only right to the land asserted by appellee in his pleadings was the right acquired by him under the judgment in his favor against Logan, and under the statute of limitations of three years. His plea setting up the statute of limitations was not submitted to the jury as an issue in the case. We are at a loss to understand upon what theory of the pleadings and the evidence the instructions referred to were given. Appellant had proven a clear legal title to the land. The only defense pleaded—except the statute of limitations—as against such title was an estoppel by reason of the judgment in the Morris suit against Logan. In this attitude of the proof and pleadings, whether Logan had or had not perpetrated a fraud on the State in his purchase of the land in controversy, was wholly immaterial. It was a defense appellee could not assert without proper pleading show-

ing a right in himself to the land, other than through Logan's purchase thereof.

For the errors pointed out the judgment of the lower court must be reversed. As this is the second appeal of the case, and we find nothing in the record indicating that on another trial any other than a judgment for appellant could be rendered, it is proper, we think, to here render such a judgment. The judgment of the court below, therefore, will be reversed and a judgment will be here rendered for appellant.

### ON MOTION FOR REHEARING.

After further consideration of the questions presented by the record on this appeal we have reached the conclusion that a judgment should not be here rendered, but that the cause should be remanded for a new trial. As evidence of his title to the land in controversy appellant relied upon a deed conveying same to him, claimed to have been executed by Logan January 21, 1901. Before the alleged deed was ever placed on record it was, it seems, destroyed by fire. Whether Logan in fact executed the alleged deed to Elliott or not seems to have been a controverted issue in the case. That it may be determined in the trial court, the motion for a rehearing will be granted and the cause will be remanded for a new trial.

*Reversed and remanded.*